

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-3-2004

# Lane v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-3367

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

## Recommended Citation

"Lane v. Comm Social Security" (2004). *2004 Decisions*. Paper 620.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/620

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-3367

JILL R. LANE
                              Appellant

v.

COMMISSIONER OF SOCIAL SECURITY
_____

Appeal from the United States District Court
for the Western District of Pennsylvania
(Civ. No. 03-cv-00315)
District Judge: Hon. Arthur J. Schwab

_____
Submitted Under Third Circuit LAR 34.1(a)
May 13, 2004

Before: NYGAARD, McKEE and CHERTOFF, <u>Circuit Judges</u>

(Filed June 3, 2004)

OPINION

McKEE, <u>Circuit Judge</u>.

Jill R. Lane appeals the district court's decision affirming the final decision of the

Commissioner of Social Security that Lane was not entitled to Disability Insurance

Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433.  For the

reasons that follow, we will affirm.

**I.**

Lane applied for DIB on October 25, 2001, alleging disability since August 24,

1999, due to a hysterectomy and resulting complications. Her insured status expired on March 31, 2000. The state agency denied her claim at the initial level of administrative review and Lane filed a timely request for a hearing.[1]

A hearing was thereafter held before an administrative law judge (ALJ) on August 18, 2002. Lane testified represented by counsel, and a vocational expert also testified. The ALJ issued a decision finding that, despite her impairments, Lane was capable of making a vocational adjustment to a significant number of jobs in the national economy. Accordingly, the ALJ found that Lane was not disabled as defined in the Social Security Act.

The Appeals Council thereafter denied Lane's request to review the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. Lane subsequently filed suit in the district court seeking judicial review of the Commissioner's final decision. The district court eventually granted the Commissioner's motion for summary judgment and affirmed the final decision of the Commissioner. This appeal followed.

**II.**

---

[1]As part of the disability process redesign program, the Commissioner tested, in randomly selected cases such as this one, a simplified disability determination process. *See* 20 C.F.R. § 404.906(b)(4). Accordingly, Lane was permitted to request a hearing before an ALJ without seeking reconsideration of the initial determination.

Lane was thirty years old[2] on her date last insured, March 31, 2000,[3] and thirty-three years old on the date of the ALJ's decision. She has a high school education and past relevant work experience as a nursing staff assistant, a screen printing laborer, a nurse's aid, a cashier and a planter. She testified that she most recently worked in 1999.

She had a tubal ligation in 1996 and a laparoscopy for pelvic pain in 1998. In February 1999, Rocco A. Fulciniti, M.D., diagnosed Lane with endometriosis,[4] and she underwent a laparotomy, total abdominal hysterectomy, bilateral salpingo-oophorectomy, and lysis[5] of adhesions.[6] She developed symptoms of severe vaginal bleeding and a hematoma and was admitted to the University of Pittsburgh Medical Center-McKeesport emergency department for complaints of left lower abdominal pain and vaginal bleeding.

---

[2]Lane is considered a "younger person" under the Commissioner's regulations. 20 C.F.R. § 404.1563. Age is not considered a significant impediment to adapting to new work situations for younger persons, especially persons under age 45, *id.*, but, rather, is a positive vocational factor. 20 C.F.R. § 201.00(h).

[3]Lane bears the burden of showing that she became disabled prior to March 31, 2000, the date of which her insured status expired, in order to be entitled to DIB. 20 C.F.R. § 404.131(a); *Matullo v. Bowen*, 926 F.2d 240, 244 (3d Cir. 1990).

[4]Endometriosis is a condition in which tissue containing typical endometrial granular and stromal elements occurs aberrantly in various locations in the pelvic cavity or some other area of the body. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 594 (29th ed. 2000).

[5]Lysis means destruction; decomposition; or the mobilization of an organ by division of restraining adhesions. DORLAND'S at 1041.

[6]Adhesions are a fibrous band or structure by which parts normally adhere. DORLAND'S at 31.

Radu Mercea, M.D., prescribed percocet upon Lane's discharge.

In March 1999, Jason Dimsdale, M.D., performed additional surgery to repair the separation of Lane's vaginal cuff and evacuate a hematoma, and she was thereafter discharged in stable condition.

In September 1999, Robert Pagano, M.D., performed a colonoscopy with biopsies, which revealed no abnormalities. Lane reported recurrent diarrhea and pain across her abdomen that worsened before a bowel movement and was relieved by loose stools. Dr. Pagano noted that the pain was possibly related to adhesions and prior surgeries. Lane underwent a follow-up examination by Dr. Pagano in November 1999. She complained of abdominal pain that worsened when she performed housework, bent down, twisted, or wore tight fitting clothes. Her abdominal area was tender to the touch and her weight had dropped from 132 pounds to under 100 pounds. With a dietary supplement, she subsequently got back to 106 pounds. Dr. Pagano suspected that the symptoms might be related to underlying adhesions.

In December 1999, Dr. Dimsdale performed a laparotomy for lysis of abdominal adhesions. The surgery was performed without any injury to bowel or bladder. Lane did well post-operatively with percocet tablets to control her pain. She was tolerating a regular diet and was discharged in stable condition.

In December 1999 and April 2000, James J. Campagna, M.D., authorized refills for vicoden, but in April 2000, he warned that he would authorize no further refills for

4

that medication. In May 2000, Dr. Campagna examined Lane for her complaints of vomiting. He noted that Lane continued to have bowel movements and was not dehydrated. Dr. Campagna found no abdominal guarding, and there was only tenderness in the left lower quadrant and in the mid-epigastric region. In July 2000, Dr. Campagna found Lane to be tender in the suprapubic region and authorized another prescription for vicoden with no refills.

In September 2000, Arthur P. Fine, M.D., performed a laparoscopic enterolysis, and wrote that following the laparotomy by Dr. Dimsdale, Lane had recovered without incident and had relief of her symptoms, but only for a short period of time. He noted that for the previous four months, Lane had been experiencing abdominal pain that limited all activities. Dr. Fine freed visceral small bowel adhesions to the parietal peritoneum and Lane's prior midline lower abdominal scar and also visceral small bowel adhesions to the bladder flap.

In October 2000, Lane was treated at Jefferson Hospital Emergency Department for complaints of abdominal pain. Christoper Dookey, M.D., noted his suspicion that she had been "drug seeking." Daturan Dilangalen, M.D., also noted that he was suspicious that Lane was misusing her pain medication. Dr. Dilangalen discussed Lane's condition with Dr. Campagna, who recommended that Dr. Dilangalen not prescribe any more pain medication for Lane.

Later that month, Dr. Fine examined Lane, who was six weeks status-post a

5

laparoscopic enterolysis. Lane reported that most of her pain had resolved, and Dr. Fine noted that Lane was going hiking and hunting in the woods that weekend.

In late October 2000, Lane was admitted to Jefferson Hospital with an acute pyloric channel gastric ulcer. However, she reported that her continuing pelvic pain was controlled with Vicoden. She was in markedly improved condition upon discharge.

In December 2001, Lane was admitted to Jefferson Hospital for two days with complaints of severe mid-epigastric pain. A computed tomography (CT) scan of the abdomen and pelvis did not account for Lane's complaints of pain. Martin A. Duclos, M.D., suspected that Lane was experiencing a recurrence of peptic ulcer disease, but an examination of the upper gastrointestinal (GI) tract failed to reveal abnormalities. In February 2002, Lane was again admitted to Jefferson Hospital after experiencing difficulty in eating and losing weight. Peter J. Molloy, M.D., was consulted and indicated that the exacerbation of Lane's symptoms may have been related to a recent upper respiratory infection. Dr. Duclos adjusted Lane's pain medications and referred her to a pain program.

In March 2002, Dr. Duclos indicated that Lane stated that her abdominal pain was "tolerable." In the end of March and early April 2002, Lane voluntarily checked herself into a chemical dependency program for her abuse of narcotic-based pain medication.

In April 2002 to June 2002, Lane consulted Ronald Boron, M.D., for her complaints of abdominal pain. Dr. Boron indicated in June 2002 that he was able to press

fairly deeply on Lane's abdomen with a stethoscope without encountering any tenderness. Dr. Boron expressed serious doubt about the level of pain Lane was actually experiencing and he indicated that he would be very careful about continuing to support her request for narcotic analgesics.

Nghia V. Tran, M.D., a state agency medical expert, reviewed the evidence of record and opined that Lane had a medically determinable impairment. He noted that Lane did not complain of any abdominal pain between October 2000 and October 2001. He also opined that Lane's complaints of pain and severe physical limitations were exaggerated and disproportional to the medical findings. He further found that Lane could perform light level work.

In Agency reports, Lane indicated that she did some laundry and some driving. She shopped for groceries, although her husband did most of the grocery shopping. She read true crime stories in the evening and visited with family and friends.

At the administrative hearing, the ALJ sought the testimony of a vocational expert to determine if there were any jobs that Lane could perform. The ALJ asked the vocational expert to assume a hypothetical individual with Lane's vocational characteristics who was limited to lifting ten pounds occasionally and five pounds frequently, and who required a sit/stand option. Based upon his hypothetical question, the vocational expert testified that such an individual would be capable of working as a cashier (582,000 jobs nationally), order clerk (44,800 jobs nationally), and general office

clerk (313,000 jobs nationally).

In his decision, the ALJ found that Lane had residual pain and complications from a hysterectomy, an impairment that was severe within the meaning of the Social Security Act, but that she did not meet or equal any of the listed impairments. The ALJ determined that Lane had the residual functional capacity to perform a modified range of sedentary work. The ALJ found that Lane was not capable of performing any of her relevant work. However, based on the testimony of the vocational expert, the ALJ found that Lane was capable of making a vocational adjustment to a significant number of jobs in the national economy. Accordingly, the ALJ found that Lane was not disabled within the meaning of the Social Security Act at any time through the date of his decision.

### III.

Our scope of review is limited to determining if the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Monsour Medical Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). Substantial evidence refers to that evidence that "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Ginsberg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971).

### IV.

To meet the disability standard under the Act, Lane was required to prove:

> [an] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less that 12 months.

42 U.S.C. § 423(d)(1)(A). Lane was also required to show that she had a physical or mental impairment of such severity that:

> he is not only unable to do his previous work but cannot considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

The Commissioner utilizes a five-step sequential evaluation process to evaluate DIB claims. 20 C.F.R. §§ 404.1520; *Mason v Shalala*, 994 F.2d 1058, 1063 (3d Cir. 1993). The process requires the Commissioner to consider, in sequence, whether a claimant: (1) worked during the alleged period of disability; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in the regulations and is considered per se disabling; (4) can return to his past relevant work and; (5) if not, whether he can perform other work. 20 C.F.R. §§ 404.1520. If an affirmative decision can be reached at any stage in the sequential evaluation process, further evaluation is not necessary. 20 C.F.R. §§ 404.1520(a).

After reviewing the evidence, the ALJ found that despite Lane's impairment, she retained the residual functional capacity[7] to perform sedentary work[8] with a sit/stand option on or before March 31, 2000, her date last insured. However, Lane argues that the ALJ erred in determining her residual functional capacity because the ALJ improperly rejected the findings and opinions of her treating and consulting physicians. We disagree.

Significantly, Lane's own objective medical evidence does not show that she had an impairment that prevented her from performing all work for at least twelve consecutive months. Not one of Lane's treating physicians opined that she was unable to work, let alone meet the modest demands of sedentary work. This lack of medical evidence is very strong evidence that Lane was not disabled. *See Dumas v. Schweiker*, 712 F.2d 1545, 1553 (3d Cir. 1983) (holding that Commissioner is entitled to rely not only on what the record says, but also on what it does not say). In fact, none of Lane's treating physicians concluded that she had any work-related functional limitations. Absent such evidence, Lane cannot establish disability under the Social Security Act. *See Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990) (a claimant must show not just diagnosis, but functional limitations preventing performance of substantial gainful

---

[7]"Residual functional capacity" is defined as that which an individual is still able to do despite the limitations caused by her impairments. 20 C.F.R. § 404.1545(a).

[8]Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out the job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a).

10

activity).

Lane next argues that the ALJ did not properly assess her subjective complaints of pain. Again, we disagree. A claimant's statements about pain symptoms do not alone establish disability. The Act requires objective medical evidence showing the existence of an impairment which could reasonably be expected to produce the claimed level of pain. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1529(a), 416.929(a); *Hartranft v. Apfel*, 181 F.3d 348 (3d Cir. 1999). In evaluating symptoms including pain, the regulations provide that the ALJ consider a claimant's daily activities; the type, dosage, and effectiveness of pain medication; the treatment, other than medication, received for relief of other symptoms; and any measures used to relieve pain or other symptoms. *Id.*

Here, the ALJ was aware of Lane's complaints, but properly concluded that they were not completely credible because the objective medical evidence suggested exaggeration of pain symptoms and narcotic-seeking behavior. The objective medical evidence was inconsistent with the degree of pain and extent of limitation that Lane claimed. 20 C.F.R. § 404.1529(c)(2). The objective medical evidence on or before March 31, 2000, which is recited above, showed that Lane, although experiencing some pain, did not experience pain so severe that it became totally disabling. In addition, after a thorough review of the evidence, Dr. Tran opined that Lane's complaints of pain and severe physical limitations were exaggerated and disproportionate to the objective medical findings. Dr. Tran's findings were consistent with Dr. Campagna's notations in

11

April 2000 that he would no longer prescribe narcotic analgesics for Lane.

The evidence relating to Lane's medical treatment and medications did not support a finding that she was disabled by her alleged symptoms, but rather, that she engaged, at least in part, in narcotic-seeking behavior. The notations containing her narcotic-seeking behavior were from her own treating physicians and examining physicians. For example, Dr. Boron's recent findings strongly suggested exaggeration of pain symptoms and narcotic-seeking behavior. He noted that he was having serious concerns about the amount of pain that Lane was really having and indicated feeling that she was abusing her medications and seeking additional narcotics.

Moreover, Lane was inconsistent in reporting pain. Despite reports of disabling pain, Lane reported in Agency documents that she did some laundry, drove in a limited manner, shopped for groceries, read, and visited with friends and family. In fact, in October 2000, Dr. Fine's treatment notes indicated that Lane was planning a weekend hiking and hunting trip in the woods.

Nevertheless, the ALJ's finding that Lane was limited to a modified range of sedentary work specifically accommodated Lane's subjective complaints of pain. Indeed, the ALJ's finding was even more restrictive than Dr. Tran's, who opined that Lane could perform light work. By limiting Lane to sedentary work, the ALJ gave Lane the benefit of all doubt. If the ALJ had determined that Lane was not in any pain, he would have found her capable of performing work at a much higher exertional level.

12

Finally, Lane argues that the ALJ's hypothetical to the vocational expert was flawed because it did not reference all of her subjective complaints of pain. We find no merit to this argument.

At step five of the sequential evaluation process, the Commissioner need only establish that a claimant can perform "other work." 20 C.F.R. § 404.1566(f). The Commissioner meets this burden by showing that one or more jobs exist in substantial numbers in the national economy which the claimant can perform. 20 C.F.R. § 404.1566(b). To determine which jobs Lane could perform, taking into account all of her impairments, the ALJ obtained the testimony of a vocational expert. Vocational expert testimony constitutes substantial evidence for purposes of judicial review where the testimony is in response to proper hypothetical questions which fairly set out all of a claimant's impairments. *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987).

Here, the ALJ asked the vocational expert to consider a hypothetical individual of Lane's age, education, and past relevant work experience, who was limited to sedentary work with a sit/stand option. The vocational expert responded that a hypothetical person with these limitations could perform the sedentary jobs of cashier, order clerk and general officer clerk. Lane argues that the hypothetical posed to the vocational expert was flawed because it did not contain evidence of her subjective complaints of pain and, therefore, that she had greater limitations than those found by the ALJ. However, as discussed above, Lane's subjective complaints of pain were inconsistent with the record

13

evidence.  Accordingly, the ALJ was not required to factor that into his hypothetical.

## V.

For all of the above reasons, we find that the Commissioner's determination that Lane was not totally disabled is supported by substantial evidence.  Accordingly, we will affirm the decision of the district court.