NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 24-1887

RAMON PLACENCIA,

Appellant

v.

COMMISSIONER OF SOCIAL SECURITY

Appeal from the United States District Court
for the District of New Jersey
(District Court No. 2:23-cv-00911)
District Judge: Honorable Jamel K. Semper

Submitted Under Third Circuit L.A.R. 34.1(a)
on March 27, 2025

Before: BIBAS, PHIPPS, and AMBRO, *Circuit Judges*

(Opinion filed: March 31, 2025)

OPINION[*]

AMBRO, *Circuit Judge*

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Ramon Placencia applied for disability insurance benefits under the Social Security Act, 42 U.S.C. § 423, for a disabling condition he alleged began on February 15, 2009. He has wended his way through the administrative appeals process ever since. This appeal is about the administrative law judge's (ALJ) latest decision that Placencia was not disabled between February 15, 2009 and December 4, 2012.

Placencia raises two objections. First, he claims that the ALJ failed to explain his finding that none of Placencia's impairments, either alone or together, was presumptively disabling. And second, he argues that the ALJ's finding that he could perform light and simple tasks lacked substantial evidentiary support. We disagree. There is ample support in the record to support both findings, so we affirm.

## I

Placencia's warehouse job laid him off in February 2009. Shortly after, he applied for disability insurance, alleging that he was disabled by several physical and mental impairments. Between the time he was laid off and December 2012, Placencia had visited several medical professionals to address chronic and acute health problems. At least six physicians and psychologists also reviewed his medical records during this period to evaluate his disability claims.

## A

Placencia's physical impairments included diabetes, hypertension, and, later, a ministroke. His first medical visit during the relevant period was to his primary care physician,

Dr. Gregorio Guillen, in April 2009. According to the records from this check-up, Placencia's diabetes was "better controlled" and his hypertension was "at goal." Tr. 257.[1]

Though he did not seek significant treatment for any physical complaints over the next year, he did attend other physical consultative examinations for his disability claim. The first was in November 2009 with Dr. Francky Merlin. Placencia told Dr. Merlin that he had pain in his left leg and felt depressed. His glucose level was also high.

Two months later, Dr. David Schneider, another medical consultant, reviewed Placencia's records. He found that Placencia had poorly controlled his diabetes and hypertension, but saw "no evidence of any end organ damage." Tr. 303. In Dr. Schneider's view, Dr. Merlin's findings "were es[s]entially within normal limits," and Placencia could perform light work. Tr. 303.

In May 2010, Placencia suffered a ministroke. He was admitted to the hospital and presented with left-sided weakness, slurred speech, and facial drooping. Within a few hours, his primary symptoms had resolved; within a week, his weakness was improving; and within four months, he was "asymptomatic." Tr. 360.

After his ministroke, two more medical consultants reviewed his records. Dr. Robert Walsh performed his review in September 2011. He concluded that Placencia struggled to push and pull, but could still perform light-exertion work, like standing, walking, and carrying. Dr. James Paolino then reviewed Placencia's records in March 2012. His assessment essentially mirrored Dr. Walsh's.

---

[1] "Tr." refers to the certified administrative transcript, which is found at Dkt. No. 10.

**B**

Placencia's mental impairments included depression and anxiety. In April 2009, he told Dr. Guillen, his primary care physician, that he had been feeling depressed, so Dr. Guillen prescribed him antidepressants. Around that time, Placencia also sought treatment from a mental-health provider. He told the provider that he had felt depressed for around ten years, but that his symptoms had intensified in the last year. The provider diagnosed him with an adjustment disorder with anxious and depressed mood and prescribed him therapy and medication. Though Placencia failed to attend therapy, he responded positively to the medication.

Placencia also underwent mental examinations for his disability claim. He first saw Dr. J. Theodore Brown, Jr. in November 2009. According to Dr. Brown's notes, Placencia appeared despondent, was disoriented to time, forgot objects presented to him, and failed to perform simple calculations. Dr. Brown diagnosed him with major depression with psychotic features and anxiety disorder. Placencia's second examination was with Dr. Pradip Gupta in August 2011. Again, he failed to do simple calculations, but this time, he followed three-step commands and remembered objects. Dr. Gupta, unlike Dr. Brown, found "[n]o psychosis," and diagnosed Placencia with persistent depressive disorder. Tr. 962.

Finally, as part of Placencia's disability review, three other psychologists reviewed his medical records. Dr. Jane Shapiro found in January 2010 that he could understand, remember, and carry out instructions, concentrate, respond to supervision, and adapt to routine workplace changes. She acknowledged Dr. Brown's "one-time exam[ination]" but gave "greater weight" to other treatment evidence because his findings were "not

4

consistent" with the broader record. Tr. 326. Next, Dr. Michael Britton reviewed Placencia's records in September 2011. His findings tracked Dr. Shapiro's. Finally, in March 2012, Dr. Michael D'Adamo reviewed Placencia's records and concluded that he could perform simple work.

C

After reviewing these records, the ALJ determined that Placencia was not disabled between February 15, 2009 and December 4, 2012. He found that Placencia had severe impairments—the ministroke, diabetes, hypertension, depression, and anxiety—but that none was presumptively disabling under the governing regulations. The ALJ then considered the impairments together to determine whether they were the medical equivalent of any impairments in the regulatory listings. He concluded they were not.

Because the ALJ did not find the impairments presumptively disabling, he next assessed Placencia's residual functional capacity—the most work he could do despite his limitations—and found that he could have performed a range of light and simple tasks. He gave great weight to the assessments of Drs. Schneider and Shapiro, and also cited the assessments of Drs. Britton, D'Adamo, Paolino, and Walsh.

Placencia appealed the ALJ's decision to the District Court, which concluded that there was a "substantial basis within the record to support the findings of the ALJ" and affirmed his decision. Supp. App. 40. Placencia then timely appealed to us.

II

The District Court had jurisdiction to review the ALJ's decision—a final order of the Commissioner of Social Security—under 42 U.S.C. § 405(g). We have jurisdiction to

5

review the District Court's decision under 28 U.S.C. § 1291. We review the Commissioner's factual findings for "substantial evidence," 42 U.S.C. § 405(g)—the amount of "evidence … a reasonable mind might accept as adequate to support a conclusion." *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted)). Even if we might have drawn a different conclusion, we may not "weigh the evidence or substitute [our own] conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

## III

To determine whether a claimant is disabled under the Social Security Act, an ALJ applies a five-step test. For the disputed period, the ALJ assesses whether the claimant:

1. was working,
2. had a severe impairment,
3. suffered from an impairment listed in the regulations as presumptively disabling,
4. could return to his past work, and
5. could perform other work.

20 C.F.R. § 404.1520. At Step 4, the ALJ also assesses the claimant's residual functional capacity. *Id.*

Placencia argues on appeal that the ALJ erred at Steps 3 and 4. First, he contends that the ALJ did not adequately articulate why he was not presumptively disabled at Step 3. Second, he asserts that the ALJ's residual-functional-capacity finding at Step 4 was not supported by substantial evidence. Because both findings are supported by substantial evidence, we affirm.

6

## A

The enumerated impairments in the regulations—the so-called listings—are so severe that they establish presumptive disability. 20 C.F.R. § 404.1525(a). They set a "higher level of severity than the statutory standard" for disability. *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). "Most of the listed impairments are permanent or expected to result in death." 20 C.F.R. § 404.1525(c)(4). An impairment meets the requirements of a listing only if it "satisfies all of the criteria of that listing." *Id.* § 404.1525(c)(3). If it does not, the claimant may argue that his impairment, or combination of impairments, is "medically equivalent" to a listing on the ground that it is "at least equal in severity and duration" to the listing criteria. *Id.* § 404.1526(a). "[A]llegations of pain or other symptoms" may not substitute for "a missing or deficient sign or laboratory finding." *Id.* § 404.1529(d)(3).

Placencia first contends that the ALJ did not adequately consider his high blood-sugar and blood-pressure readings. But substantial evidence supports the ALJ's conclusion that those readings do not satisfy the listings' criteria for presumptive disability because of diabetes or hypertension. Both conditions are presumptively disabling only if they detrimentally affect other body systems. *See* 20 C.F.R. pt. 404, subpt. P, app. 1 §§ 9.00B (explaining how diabetes is evaluated under the listings); 4.00H.1 (explaining how hypertension is evaluated under the listings). The ALJ rested his findings on record evidence that Placencia's physical examinations were generally unremarkable aside from his high blood-pressure and blood-sugar readings and that he did not report significant symptoms associated with his diabetes and hypertension. A reasonable mind could conclude from this evidence that Placencia's diabetes and hypertension did not detrimentally affect other body

7

systems. After all, an ALJ is "entitled to rely not only on what the record says, but also on what it does not say." *Lane v. Comm'r of Soc. Sec.*, 100 F. App'x 90, 95 (3d Cir. 2004) (citing *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983)).

Placencia also says that the ALJ did not pay adequate attention to his hypertension and resulting ministroke when deciding that he did not suffer any impairment equivalent to one in the listings. But the ALJ did. He explained the relevant listings criteria and concluded that the record did not show findings of listing-level severity. And he "later went on to discuss" in detail why the ministroke did not cause significant impairment. *Cosme v. Comm'r of Soc. Sec.*, 845 F. App'x 128, 132 (3d Cir. 2021). Although Placencia presented with slurred speech and weakness during the acute phase of the ministroke, those symptoms resolved within "one to two hours" of his arrival at the emergency room. App. 17. One of Placencia's primary care physicians, Dr. Mohammed Islam, recorded that his weakness had improved later that month, and that Placencia was "asymptomatic" a few months later. Tr. 360.

Placencia challenges as well the ALJ's finding that his mental impairments were not presumptively disabling, either on their own or together with his other impairments. He specifically objects to the ALJ's decision not to give more weight to Dr. Brown's examination. But our role at this stage is not to decide whether we agree with how the ALJ weighed the record evidence—it is to decide whether a reasonable mind could accept the ALJ's conclusion based on the evidence before him. *See Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). The ALJ here considered Dr. Brown's report and concluded that his findings were inconsistent with Placencia's remaining medical records, which showed that he

responded positively to medication and generally had adequate memory, concentration, and judgment. The ALJ gave greater weight to Dr. Shapiro's opinion, which was that Dr. Brown's "one-time examination" was "inconsistent with" Placencia's treatment history, including records from his psychiatrist. App. 22–23. A reasonable mind could draw the same conclusion from the record. *See Zirnsak v. Colvin*, 777 F.3d 607, 614 (3d Cir. 2014) (noting that the ALJ can give less weight to or reject some medical evidence, so long as he provides an explanation).

**B**

Residual functional capacity is the most work the claimant can do despite his limitations, and it is "based on all the relevant evidence in [a] case record." 20 C.F.R. § 404.1545(a)(1). In making this determination, an ALJ is "free to accept some medical evidence and reject other evidence," as long as "he provides an explanation for discrediting the rejected evidence." *Zirnsak*, 777 F.3d at 614.

The ALJ here found that Placencia was capable of light, simple work based on at least six expert assessments. Three physicians concluded that Placencia's physical impairments limited him to light work. And three psychologists concluded that he was capable of simple tasks.

Placencia contends that the ALJ's residual-functional-capacity finding was not supported by substantial evidence because its "entire … evidentiary legitimacy" came from the assessments of Drs. Schneider and Shapiro. Appellant's Br. 49. But that is inaccurate. The record contains other supportive assessments from Drs. Walsh, Paolino, Britton, and D'Adamo. Placencia relatedly argues that the ALJ's light-work finding rested solely on

9

evidence predating his 2010 ministroke. But that is inaccurate too. Drs. Walsh and Paolino concluded that he was capable of light work in September 2011 and March 2012.

Placencia also claims that the ALJ's findings that he could lift, carry, stand, and walk, but not push or pull, were "irreconcilable." Appellant's Br. 53. They are not. Drs. Walsh and Paolino both concluded that he could lift, carry, stand, and walk, but would have trouble pushing or pulling. Those are distinct functions, and the ALJ did not act unreasonably in relying on the opinions of expert physicians to conclude that some of those functions were more limited than others.

Finally, Placencia challenges the ALJ's finding that he was capable of simple tasks in light of his earlier finding at Step 3 that he suffered from "moderate limitations" in "broad areas of mental functioning." Appellant's Br. 48; App. 23. We rejected an argument like this one in *Hess v. Commissioner of Social Security*, 931 F.3d 198 (3d Cir. 2019). We declined there to adopt a "categorical prohibition against using a 'simple tasks' limitation after an ALJ has found that a claimant 'often' faces difficulties in 'concentration, persistence, or pace.' Rather, a 'simple tasks' limitation is acceptable after such a finding, as long as the ALJ offers a valid explanation for it." *Id.* at 212. The ALJ here did so: Placencia's moderate limitations were not so significant that he could not perform simple tasks—a finding fortified by the assessment of Dr. Shapiro.

\*   \*   \*

Placencia believes that the ALJ looked at the record and drew the wrong conclusion. In his view, the better interpretation is that he was disabled between February 15, 2009 and December 4, 2012. But our role at this stage is not to reweigh the evidence—it is to

determine whether a reasonable mind could have reviewed that evidence and reached the

same conclusion as the ALJ. One could, so we affirm.