PRECEDENTIAL
UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2226
_____

RUSSELL HESS, III

v.

COMMISSIONER SOCIAL SECURITY,
                                        Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 5-17-cv-01223)
District Judge:  Hon. Wendy Beetlestone
_____

Argued
January 24, 2019

Before:   JORDAN, KRAUSE, and ROTH, *Circuit Judges.*

(Filed: July 30, 2019)
_____

Jordana Cooper   [ARGUED]
M. Jared Littman
Social Security Administration
Office of General Counsel SSA/OGC/Region III
300 Spring Garden Street – 6th Fl.
P.O. Box 41777
Philadelphia, PA   19123
        *Counsel for Appellant*

Christopher J. Marzzacco
Thomas F. Meister   [ARGUED]
Marzzacco Niven & Associates
1909 N. Front Street
2nd Fl., Ste. 1
Harrisburg, PA   17102
        *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

This is a case about form and substance in decisions about eligibility for social security benefits.  The Appellee, Russell Hess, III, invites us to give supremacy to form.  While form is not irrelevant in the scripted analytical steps called for when determining if someone is disabled, Hess's invitation would lead to the hidebound circumstance in which an Administrative Law Judge ("ALJ") would have to "chant every magic word correctly" or an otherwise thorough and well-reasoned opinion "would have to be remanded[.]" *United States v. Hickman*, 991 F.2d 1110, 1115 (3d Cir. 1993) (Roth,

J., concurring in part and dissenting in part).  The law makes no such demand.  *Cf. Biestek v. Berryhill*, 139 S. Ct. 1148, 1157 (2019) ("Where Biestek goes wrong, at bottom, is in pressing for a categorical rule[.] … The inquiry, as is usually true in determining the substantiality of evidence, is case-by-case.").

The ALJ who ruled on Hess's application for social security disability benefits concluded that Hess had "moderate difficulties" in "concentration, persistence or pace," but the ALJ offered a detailed explanation for why she believed those difficulties were not serious and why Hess was nevertheless capable of performing simple tasks.  (App. at 32.)  Based on that analysis, she found that Hess was "limited to jobs requiring understanding, remembering, and carrying out only simple instructions and making only simple work-related decisions[.]"  (App. at 33-34.)  In a series of hypothetical questions meant to include Hess's limitations, she asked a vocational expert whether there were jobs in the national economy available to someone with those limitations.  The expert said there were.  The ALJ thus decided that Hess was not disabled and rejected his claim for benefits.

Hess then filed this lawsuit challenging the ALJ's decision.  The District Court determined that the ALJ had erred because, in the limitations she described in her hypothetical questions to the vocational expert, she failed to include or account for her finding that Hess had "moderate" difficulties in "concentration, persistence, or pace."  Accordingly, the Court ordered the case remanded to the ALJ.

The government now appeals.  It argues that an ALJ's statement of a limitation confining a person to "simple tasks" – like the limitation statement at issue here – is

3

permissible after a finding of "moderate" difficulties in "concentration, persistence, or pace," if the ALJ offers a "valid explanation" for it. According to the government, the explanation given by the ALJ in this case was "valid," and the District Court failed to give it due consideration. We agree and, for the reasons that follow, will remand the case to the District Court with instructions to enter judgment for the government.

## I. BACKGROUND

### A. The Social Security Disability Determination Methodology

Social security cases can be complex, in part because of the labyrinthine regulatory structure that governs them. The matter before us involves the part of that structure controlling disability determinations.

The Social Security Administration, working through ALJs, decides whether a claimant is disabled by following a now familiar five-step analysis. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2016).[1] The burden of proof is on the claimant at all steps except step five, where the burden is on the Commissioner of Social Security. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). The analysis proceeds as follows:

---

[1] In this opinion, we cite to the edition of the Code of Federal Regulations in force at the time of the ALJ's decision in this case. There have been changes to social security regulations since that time, but those changes do not affect our analysis, and neither party contends that they should.

4

At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is, he is not disabled. *Id.* Otherwise, the ALJ moves on to step two.

At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" *Id.* §§ 404.1520(c), 416.920(c). If the claimant lacks such an impairment, he is not disabled. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If he has such an impairment, the ALJ moves on to step three.

At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" *Smith*, 631 F.3d at 634. If the claimant's impairments do, he is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If they do not, the ALJ moves on to step four.

At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work."[2] *Id.* §§ 404.1520(a)(4)(iv),

---

[2] There is some ambiguity in the case law as to whether RFC is assessed at step four or at the end of step three. *Compare Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) ("Before moving to step four, the ALJ must determine a claimant's residual functional capacity[.]"), *with Moon v.*

416.920(a)(4)(iv). A claimant's "[RFC] is the most [he] can still do despite [his] limitations." *Id.* §§ 404.1545(a)(1), 416.945(a)(1). If the claimant can perform his past relevant work despite his limitations, he is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If he cannot, the ALJ moves on to step five.

At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] … age, education, and work experience[.]" *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). If the claimant can make an adjustment to other work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If he cannot, he is disabled.

When, as in this instance, mental impairments are at issue, additional inquiries are layered on top of the basic five-step disability analysis. *Id.* §§ 404.1520a(a), 416.920a(a). An ALJ assesses mental impairments in the following way.

---

*Colvin*, 763 F.3d 718, 720 (7th Cir. 2014) ("[T]he ALJ was required to determine [the claimant's] 'residual functional capacity' at step four."). The ALJ treated it as an intermediate step between steps three and four. (*See infra* n.5.) We acknowledge that the social security regulations state that, "[b]efore [the ALJ] go[es] from step three to step four, [he] assess[es] [the claimant's] residual functional capacity." 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). But, because we find it simpler to consider the RFC assessment with step four, we will treat the RFC assessment as part of step four.

As part of step two of the disability analysis, the ALJ decides whether the claimant has any "medically determinable mental impairment(s)." *Id.* §§ 404.1520a(b)(1), 416.920a(b)(1); *see also id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (providing that, at step two, the ALJ determines whether the claimant has "a severe medically determinable physical or mental impairment"). Then, as part of that same step and also step three of the disability analysis, the ALJ determines "the degree of functional limitation resulting from the impairment(s)[.]" *Id.* §§ 404.1520a(b)(2), 416.920a(b)(2); *see also id.* §§ 404.1520a(d), 416.920a(d), 404.1520(a)(4)(ii)-(iii), 416.920(a)(4)(ii)-(iii) (explaining that the ALJ uses "the degree of functional limitation" in assessing "the severity of [the claimant's] mental impairment(s)[,]" which is considered at steps two and three). The ALJ does so in "four broad functional areas … : Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The first three of those areas are rated on a "five-point scale: None, mild, moderate, marked, and extreme." *Id.* §§ 404.1520a(c)(4), 416.920a(c)(4). The fourth is rated on a scale of: "None, one or two, three, four or more." *Id.*

The ALJ uses that degree rating in "determin[ing] the severity of [the] mental impairment(s)[,]" which is considered at steps two and three. *Id.* §§ 404.1520a(d), 416.920a(d); *see also id.* §§ 404.1520(a)(4)(ii)-(iii), 416.920(a)(4)(ii)-(iii) (stating that, at steps two and three, the ALJ "consider[s] the medical severity of [the claimant's] impairment(s)"). "If … the degree of [the claimant's] limitation in the first three functional areas [is] 'none' or 'mild' and 'none' in the fourth

7

area, [the ALJ] will generally conclude that [the claimant's] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [his] ability to do basic work activities." *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1) (citation omitted).

At step three, if the ALJ has found that a mental impairment is severe, he "then determine[s] if it meets or is equivalent in severity to a listed mental disorder." *Id.* §§ 404.1520a(d)(2), 416.920a(d)(2); *see also id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) (explaining that, at step three, the ALJ determines whether the claimant has "an impairment(s) that meets or equals" a listed impairment). That analysis is done "by comparing the medical findings about [the claimant's] impairment(s) and the rating of the degree of functional limitation to the criteria of the appropriate listed mental disorder." *Id.* §§ 404.1520a(d)(2), 416.920a(d)(2). For example, the claimant may have the equivalent of a listed impairment if, *inter alia*, he has at least two of "1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration[.]" *Id.* Pt. 404, Subpt. P, App. 1.

Finally, to complete steps four and five of the disability analysis, if the ALJ has found that the claimant does not have a listed impairment or its equivalent, the ALJ "will then assess [the claimant's mental RFC]." *Id.* §§ 404.1520a(d)(3), 416.920a(d)(3); *see also id.* §§ 404.1520(a)(4)(iv)-(v), 416.920(a)(4)(iv)-(v) (providing that, at steps four and five, the ALJ considers the claimant's RFC).

8

With that regulatory framework in mind, we turn to the details of the case before us.

### B. Factual and Procedural Background

#### 1. Hess's Social Security Application and the ALJ's Opinion

In August 2013, Hess applied for social security disability benefits. After a hearing, the ALJ denied his claims. Her decision was based on her conclusion that Hess was not disabled within the meaning of the applicable regulations. In reaching that conclusion, she followed the five-step disability analysis just outlined.

The ALJ's reasoning and the findings she made are central to this case. Consequently, we describe the relevant portions of her opinion in detail. As to step one, however, it is sufficient to simply note that the ALJ determined Hess was not engaged in substantial gainful activity.

At step two, the ALJ found that Hess had multiple "severe impairments[.]" (App. at 30.) Specifically, she said that Hess suffered from:

> major depressive disorder single episode-mild, depressive disorder not otherwise specified, bipolar disorder, posttraumatic stress disorder, history of conduct disorder and impulse control disorder, personality disorder not otherwise specified with antisocial tendencies, osteoarthritis and degenerative joint disease of the right ankle, cervical degenerative disc

9

disease, chronic pain disorder and history of opioid abuse and dependence.

(App. at 30-31 (citations omitted).)[3]

At step three, the ALJ found that Hess's mental impairments did not meet the standards for a "listed impairment[.]" (App. at 31.) In making that finding, she rated Hess in the four areas of mental functional limitation.[4] As to "concentration, persistence or pace" – the area of functional limitation at issue here – she concluded that Hess had "moderate difficulties." (App. at 32.) She reasoned that, although a state psychological consultant had rated Hess as having "not … more than mild limitation in this area of functioning," that opinion was inconsistent with the record, including that Hess had been "diagnosed with mental health impairments, was in mental health treatment, and was prescribed mental health medications." (App. at 32, 37.)

The ALJ clarified, however, that she did not consider Hess's "moderate"-level difficulties in "concentration, persistence, or pace" to be so serious that he could not perform simple tasks. In her words:

---

[3] Only the impairments that affect Hess's mental capabilities are at issue now.

[4] As earlier noted, those are "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

10

[Hess's] self-reported activities of daily living, such as doing laundry, taking care of his personal needs, shopping, working, and paying bills (when he has money), … are consistent with an individual who is able to perform simple, routine tasks. Furthermore, progress notes from treating and examining sources generally indicate no serious problems in this area of functioning, reporting that [Hess] could perform simple calculations, was fully oriented, and had intact remote/recent memory.

(App. at 32 (citations omitted).)  The "self-reported activities of daily living," as referenced by the ALJ, were described more fully as follows:

[Hess] reported he could care for his own personal needs and grooming, do laundry (although he needs help carrying the basket), clean, use public transportation, attend appointments, work part time, and go shopping in stores.  [Hess] also pays bills (when he has money), counts change, and uses money orders.  [Hess] testified that he works three days a week for five to six hours as a dishwasher, and he keeps track of the pantry items, checking for empty boxes and out of date food items.

(App. at 32 (citations omitted).)

11

At step four, the ALJ performed an RFC assessment.[5] She decided that Hess was "limited to jobs requiring understanding, remembering, and carrying out only simple instructions and making only simple work-related decisions[.]" (App. at 33-34.) In selecting that limitation, the ALJ engaged in a detailed examination of the record, from which she concluded that Hess's mental difficulties were such that he was capable of performing simple tasks.

The ALJ first noted that Hess's self-reported symptoms could "reasonably be expected" to flow from his "medically determinable impairments[.]" (App. at 34.) Those symptoms included "trouble with concentration and completing tasks[,] …. trouble with written and verbal instructions[,] … [inability to] handle stress very well[,] …. racing thoughts, a lot of scrambled thoughts, and trouble sleeping." (App. at 34 (citations omitted).) The ALJ found, however, that his "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record[.]" (App. at 34-35.)

To support that finding, and to evaluate Hess's capabilities more generally, the ALJ analyzed each source of relevant evidence. Specifically, she looked to mental status examinations and reports, opinion evidence, Hess's Global Assessment of Functioning ("GAF") scores, his mental health

---

[5] More precisely, as earlier noted (*supra* n.2), the ALJ viewed the RFC assessment as an intermediate step between steps three and four. As also noted, however, we will treat the RFC assessment as an element of step four.

treatment history, his activities of daily living, and a report by one of Hess's longtime friends.

Regarding the evidence from mental status examinations and reports, the ALJ recognized that Hess had "numerous mental health diagnoses" and was "intermittently engaged in formal mental health treatment, including therapy and psychotropic medications." (App. at 35 (citations omitted).) Nevertheless, she decided that the evidence showed that Hess was not seriously limited and he was capable of functioning effectively. For example, an October 2013 mental status examination revealed that Hess "was not currently taking any psychotropic medications"; "had fair hygiene and grooming, good eye contact, a pleasant and friendly attitude, a cooperative attitude, goal directed thought processes, no delusions or paranoia, appropriate affect, neutral mood, full orientation, adequate recent/remote memory, and adequate impulse control"; and "could perform simple mathematical calculations." (App. at 36 (citation omitted).) Likewise, a February 2014 mental status examination showed that Hess had "appropriate dress and grooming, cooperative attitude, good eye contact, normal speech, goal directed thought processing, full orientation, and no suicidal and homicidal ideations." (App. at 36 (citation omitted).) Furthermore, an August 2015 mental status examination demonstrated "neat and clean hygiene and grooming, a cooperative attitude, normal speech, full orientation, and normal memory." (App. at 36 (citations omitted).) Additionally, the ALJ noted that records from a period of close observation that Hess had in 2014 did "not contain any references to psychologically based problems[.]" (App. at 36.)

13

The ALJ acknowledged that a March 2015 mental status examination "allude[d] to an inability to work," as well as "a depressed mood and poor insight/judgment[.]" (App. at 36, 38.) But she assigned "[a]ny report of an inability to work … little weight" because it was inconsistent with the record, the examination itself contained "no function by function opinion on th[at] issue," and Hess's inability to work was self-reported. (App. at 38.) Moreover, the examination was not all negative. It revealed "fair hygiene, fair eye contact, a cooperative attitude, normal speech, a calm affect, full orientation, and goal directed thought processing." (App. at 36.)

Moving on to the opinion evidence, the ALJ similarly found that it showed Hess's mental difficulties left him capable of engaging in simple work. For example, she explained that Dr. Schwartz, a psychologist, opined that Hess "had 'mild' limitations in his ability to understand and remember simple instructions[,]" had "'moderate' limitations in his ability to carry out simple instructions[,]" "could perform simple, unskilled work with additional restrictions in social and adaptive functioning[,]" and had "'marked' limitations in his ability to respond appropriately to usual work pressures or changes in a routine work setting." (App. at 36-37 (citation omitted).) The ALJ assigned most of that opinion "great weight[,]" but she gave "little weight" to the conclusion that Hess had "marked" limitations because it was inconsistent with the record generally and with a mental status examination Dr. Schwartz himself had performed, and because it was "based predominantly upon [Hess's] subjective complaints[.]" (App. at 37.)

14

The ALJ also examined the opinion of a "treating mental health provider[,]" who said that Hess "could perform simple unskilled work but had 'marked' limitations in … his ability consistently to concentrate, persist, and keep pace in a routine work setting." (App. at 37 (citation omitted).) The ALJ again rejected the "marked" rating as inconsistent with the record. In doing so, she noted that Hess "was able to work part-time as a dishwasher and tolerate [a period of structured supervision] without any reports of behavioral issues or problems completing tasks." (App. at 37.) She further highlighted the mental status examinations – which "regularly and routinely described [Hess] as cooperative and calm, having normal speech, full orientation, and logical thought processes" – and observed that the record did "not contain frequent references to fatigue, anhedonia, or staying in bed all day." (App. at 37.)[6]

As to Hess's GAF scores, the ALJ also deemed them not to be indicative of significant mental health difficulties. She acknowledged that Hess received "scores ranging from serious symptoms to moderate symptoms." (App. at 36 (citations omitted).) But, she gave the GAF scores reflecting more serious symptoms "little weight" because they were "not consistent with the underlying mental status examinations[,]" Hess's "own reported daily activities[,]" and "the record as [a] whole that did not reveal frequent or regular serious symptoms." (App. at 37-38 (citations omitted).) Additionally, the ALJ explained that Hess's "most recent

---

[6] The ALJ additionally considered the state psychological consultant's opinion referenced in our discussion of step three above, to which, as noted there, she gave little weight.

15

scores … indicat[ed] that [Hess] was experiencing moderate work-related mental health symptoms." (App. at 36 (citations omitted).) She assigned the GAF scores reflecting less serious symptoms "great weight" because they were "more consistent with the record" and more accurately captured Hess's "overall functioning." (App. at 38 (citations omitted).) In doing so, the ALJ again cited the mental status examinations, which "revealed few serious symptoms," the fact that Hess was "able to work part time as a dishwasher," and records from close observation that "did not reveal any serious behavioral issues[.]" (App. at 38.)

Regarding Hess's mental health treatment history, the ALJ reasoned that it neither supported the claimed severity level of Hess's symptoms nor suggested that he was unable to perform simple tasks. She said that Hess was "not always compliant with treatment … and ha[d] been discharged from treatment due to non-compliance"; "experienced short hospitalizations" in 2013 and 2015 "due in part to narcotics misuse and heroin addiction"; and "was not fully engaged in substance abuse treatment until" 2015. (App. at 36.) She noted, though, that Hess was then in a treatment program that began in August 2015, had been compliant with that treatment, and his symptoms had improved.

Turning to Hess's daily activities, the ALJ likewise found that those activities were not suggestive of symptoms as serious as Hess claimed, and that they instead demonstrated an ability to engage in simple work. As part of the RFC analysis, the ALJ reiterated what she had earlier said at step three concerning Hess's daily activities; namely, that Hess "takes care of his own personal needs and grooming, does laundry[,] … cleans, uses public transportation, attends

16

appointments, works part time, … goes shopping in stores[,] …. pays bills (when he has money), counts change, … uses money orders[,] …. [w]orks three days a week for five to six hours as a dishwasher, and … keeps track of the pantry items checking for empty boxes and out of date food items." (App. at 36-37 (citations omitted).)

Finally, the ALJ reviewed a report by a longtime friend of Hess's stating that Hess "could cook daily, play computer games, pay bills, follow instructions good, pay attention for a long time, go shopping in stores, use public transportation, and take care of his own personal needs and grooming." (App. at 38 (citation omitted).) The ALJ assigned that report "partial weight insofar as it [was] consistent with the record as a whole[.]" (App. at 38.)

The ALJ ultimately concluded that she had discerned "appropriate limitations" to account for Hess's "mental impairments" and that those "impairments and the restrictions caused by them would not prevent him from performing sedentary, unskilled work as defined … in the [RFC]." (App. at 38-39.) She said that her RFC determination was based on her findings as to Hess's functional limitations (e.g., as to "concentration, persistence, or pace") and "all the evidence with consideration of the limitations and restrictions imposed by the combined effects of all [of Hess's] medically determinable impairments[.]" (App. at 34.) She particularly cited the mental status examinations, "the objective medical evidence … [Hess's] non-compliance [with treatment], the opinion evidence, and [Hess's] activities of daily living." (App. at 38.)

At step five,[7] the ALJ found that there were "jobs … in significant numbers in the national economy that [Hess could] perform" and, thus, she concluded that Hess was not disabled. (App. at 39.) She based that conclusion on answers to hypothetical questions she posed to a vocational expert about whether there were jobs "in the national economy for an individual with [Hess's] age, education, work experience, and [RFC]." (App. at 40.) **[App. at 40, 43-45.]**

## 2. Hess's Lawsuit and the District Court's Decision

After the ALJ denied his claim for disability benefits, Hess appealed to the Social Security Administration Appeals Council, which denied his request for review. Accordingly, the ALJ's decision became the final decision of the Commissioner of Social Security. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Hess then filed suit to challenge that decision, pursuant to 42 U.S.C. § 405(g).[8]

---

[7] The ALJ moved on to step five because she found that Hess could not perform his "past relevant work[.]" (App. at 39.) That finding was based on all of Hess's limitations, including those not at issue here.

[8] Section 405(g) provides, in relevant part, "Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow." 42 U.S.C. § 405(g).

The case was referred to a Magistrate Judge, who wrote a Report and Recommendation ("R&R") in Hess's favor. According to the Magistrate Judge, the ALJ's decision was inadequate because she failed to "include in her RFC assessment, or in any hypothetical relied upon, her finding that [Hess] has [a] moderate limitation in maintaining concentration, persistence or pace" and "did not otherwise account for this finding in her RFC assessment or in any hypothetical question." (App. at 19.) That, the Magistrate Judge said, ran afoul of our decision in *Ramirez v. Barnhart*, 372 F.3d 546 (3d Cir. 2004), which the Judge understood to hold "that, when an ALJ finds that a claimant has [a moderate] degree of limitation in maintaining concentration, persistence or pace, she *must* include this limitation in any hypothetical question posed to a [vocational expert] that the ALJ wishes to rely upon" and "that this degree of limitation must be reflected in the RFC assessment." (App. at 19.) The Magistrate Judge otherwise rejected all of Hess's challenges to the ALJ's decision.

The District Court approved and adopted the R&R. In doing so, it made some additional comments about the case. The Court explained that *Ramirez* "reiterated that a hypothetical must account for all of an applicant's impairments" and "disapproved of a hypothetical restricting an applicant's potential work to 'simple tasks' when an ALJ also finds that the applicant 'often' has deficiencies in concentration, persistence, or pace." (App. at 7 n.1 (citation omitted).) It observed that, here, "the ALJ did not incorporate her finding of a 'moderate' limitation in concentration, persistence, or pace in a hypothetical she posed to the vocational expert" but rather "asked the vocational expert if a

19

person 'limited to jobs requiring understanding, remembering, and carrying out only simple instructions making only simple, work related decisions …' could perform a job in the national economy." (App. at 7 n.1.) The District Court concluded, in line with the Magistrate Judge's R&R, that the ALJ had violated *Ramirez* and the case must be remanded for further administrative proceedings.[9]

The government timely appealed.

## II. DISCUSSION[10]

The somewhat complicated question on appeal is whether the ALJ's limitation of Hess "to jobs requiring understanding, remembering, and carrying out only simple instructions and making only simple work-related decisions[,]" as noted in the RFC determination at step four of the disability

---

[9] The District Court also noted that "three unreported Third Circuit cases have held that a hypothetical restricting an applicant to simple tasks is sufficient even where an ALJ has determined that the applicant possesses moderate difficulties in concentration, persistent [sic] or pace[,]" but it determined those decisions to be inconsistent with *Ramirez*. (App. at 7 n.1.)

[10] The District Court had jurisdiction under 42 U.S.C. § 405(g). We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. "We exercise plenary review over legal conclusions reached by the Commissioner[,]" and "[w]e review the Commissioner's factual findings for 'substantial evidence[.]'" *Chandler*, 667 F.3d at 359 (citation omitted).

analysis and in the resulting hypothetical questions to the vocational expert at step five, was permissible in light of her finding, at step three, of "moderate difficulties" in "concentration, persistence or pace[.]"[11] (App. at 32-34.) The government argues that that limitation was acceptable because the ALJ offered a "valid explanation" for it. Hess responds that such a limitation is forbidden by *Ramirez*, after a finding of "moderate" difficulties in "concentration, persistence, or pace." The government's position is correct, and the District Court should not have disturbed the ALJ's decision.

## A. The Functional Limitation Findings Do Not Require Particular Language to Appear in the Statement of the Limitation

The parties argue over whether an ALJ must use specific words in stating a limitation that will be employed at steps four and five of the disability analysis, based on the functional limitation findings at steps two and three, such as a finding of "moderate" difficulties in "concentration, persistence, or pace." The government says that an ALJ need not do so. Hess responds that "the hypothetical posed to the vocational [expert] and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the

_____

[11] Here, the ALJ's statement of Hess's limitation was the same in the RFC and in the hypothetical questions. That is frequently the case. *Cf.* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v) (stating that an ALJ considers the claimant's RFC at step five). In this opinion, therefore, we often refer to the limitation language in the RFC and hypothetical questions collectively as the ALJ's stated "limitation."

medical record." (Answering Br. at 6.) But the parties are talking past each other, and both are correct.

It is true, as the government contends, that no incantations are required at steps four and five simply because a particular finding has been made at steps two and three. Those portions of the disability analysis serve distinct purposes and may be expressed in different ways. When mental health is at issue, the functional limitation categories are "used to rate the severity of mental impairment(s)[.]" SSR 96-8P, 1996 WL 374184, at *4 (July 2, 1996). While obviously related to the limitation findings, the RFC is a determination of "the most [a claimant] can still do despite [his] limitations" "based on all the relevant evidence in [the] case record." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); SSR 96-8P, at *2. It "requires a more detailed assessment [of the areas of functional limitation] by itemizing various functions contained in the broad [functional limitation] categories[.]" SSR 96-8P, at *4. And, unlike the findings at steps two and three, the RFC "must be expressed in terms of work-related functions[,]" such as by describing the claimant's "abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." *Id.* at *6. In short, the findings at steps two and three will not necessarily translate to the language used at steps four and five.

Additionally, and perhaps more importantly, social security regulations permit, and indeed require, an ALJ to offer "a narrative discussion describing how the evidence supports each" limitation at step four of the disability analysis. *Id.* at *7. That suggests a wide range of limitation language is

22

permissible, regardless of what the ALJ found at earlier steps of the analysis, so long as the chosen limitation language is explained.

Nevertheless, as Hess maintains, the statement of a limitation does need to reflect the claimant's particular impairments, including those embodied in the functional limitation findings. "In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Id.* at \*5; *see also* 20 C.F.R. §§ 404.1545(c), 416.945(c) (explaining that a mental RFC assessment must begin with an examination of "the nature and extent of [the claimant's] mental limitations and restrictions"). And, again, although steps two and three differ from steps four and five, the functional limitation findings are plainly relevant to an ALJ's statement of the claimant's limitation at the later steps because they involve the claimant's actual impairments. *Cf.* SSR 96-8P, at \*4 ("The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment [of the areas of functional limitation] by itemizing various functions contained in the broad [functional limitation] categories[.]").

Our case law supports the conclusion that the findings at steps two and three are important to the ALJ's statement of a claimant's limitation but do not require the use of any particular language. In *Ramirez*, we said:

> We cannot concur in the Commissioner's [position that the functional limitation findings are relevant only at steps two and three of the disability analysis]. While [the pertinent

23

regulation] does state that the [functional limitation] findings are "not an RFC assessment" and that step four requires a "more detailed assessment," it does not follow that the [functional limitation findings] play no role in steps four and five[.]

372 F.3d at 555. We clarified, however, that those findings need only be "adequately conveyed" in the ALJ's statement of the limitation, not recited verbatim. *Compare id.* at 552 n.2 (observing that the claimant was arguing "that all of a claimant's limitations must be *adequately conveyed* in the hypothetical[,]" not, as the government suggested, that functional limitation findings must be stated "verbatim in the hypothetical"), *with id.* at 554 ("[The ALJ's chosen] limitations do not *adequately convey* all of [the claimant's] limitations." (emphasis added)).[12]

In short, the functional limitation findings do not dictate the terms of the ALJ's statement of the claimant's limitation in the final analytical steps. But those findings are relevant to that statement of the limitation, which must be sufficient to reflect all of a claimant's impairments.

---

[12] We did say in *Ramirez* that "we hold that the ALJ's hypothetical did not adequately *capture and recite* all of [the claimant's] mental impairments and the limitations caused by those impairments." 372 F.3d at 555 (emphasis added). As demonstrated by the quoted language above, however, in the context of our opinion, "capture and recite" meant "adequately convey."

24

**B.    A "Simple Tasks" Limitation Is Appropriate After a Finding of "Moderate" Difficulties in "Concentration, Persistence, or Pace," if a "Valid Explanation" Is Given**

The next issue is whether a "simple tasks" limitation, like the one stated by the ALJ here, can be said to fairly reflect a claimant's impairments when that claimant has been found to face "moderate" difficulties in "concentration, persistence, or pace." The government argues that such a statement of the limitation is acceptable, if an ALJ provides a "valid explanation." Hess responds that, under *Ramirez*, "a limitation to simple instructions and simple work-related decisions does not reflect a claimant's moderate restrictions in concentration, persistence, or pace." (Answering Br. at 7-8.) We agree with the government.

**1.    The ALJ Chose a "Simple Tasks" Limitation**

Before reaching the merits of this issue, we must address one preliminary matter. Both parties treat the limitation here – "to jobs requiring understanding, remembering, and carrying out only simple instructions and making only simple work-related decisions[,]" (App. at 33-34) – as equivalent to a limitation to "simple tasks." That is important because the case law they rely upon generally involves so-called "simple tasks" limitations.

We agree with their interpretation of the ALJ's framing of the limitation. A limitation to "simple tasks" is fundamentally the same as one "to jobs requiring understanding, remembering, and carrying out only simple

25

instructions and making only simple work-related decisions[.]" (App. at 33-34;) *see Davis v. Berryhill*, 743 F. App'x 846, 850 (9th Cir. 2018) (treating "understanding, remembering, and carrying out only simple instructions" as equivalent to "simple tasks"); *Richards v. Colvin*, 640 F. App'x 786, 790 (10th Cir. 2016) (referring to a limitation "to understanding, remembering, and carrying out only simple instructions and making only simple work-related decisions" as a "simple-work limitation[]"). Indeed, both formulations – the ALJ's and the more concise phrase "simple tasks" – relate to mental abilities necessary to perform "unskilled work." *See* 20 C.F.R. §§ 404.1568(a), 416.968(a) ("Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."); SSR 96-9P, 1996 WL 374185, at *9 (July 2, 1996) (concluding that "unskilled work" requires "[u]nderstanding, remembering, and carrying out simple instructions" and "[m]aking … simple work-related decisions"); *cf. Richards*, 640 F. App'x at 790 (treating "simple-work limitations" as similar to "unskilled work" limitations). So the parties' reliance on case law related to "simple tasks" is appropriate and helpful.

## 2. Only a "Valid Explanation" Is Required

Turning to the merits, the government is correct that, as long as the ALJ offers a "valid explanation," a "simple tasks" limitation is permitted after a finding that a claimant has "moderate" difficulties in "concentration, persistence, or pace." That conclusion flows directly from our decision in *Ramirez*.

In *Ramirez*, as Hess notes, we disapproved of a "simple tasks" limitation after an ALJ had found that a claimant suffered from deficiencies in "concentration, persistence, or pace" that arose "often[.]" 372 F.3d at 554-55. We said that "a requirement that a job be limited to one to two step tasks … does not adequately encompass a finding that [the claimant] 'often' has 'deficiencies in concentration, persistence, or pace[.]'" *Id.* at 554 (citation omitted). We were specifically concerned that such a limitation would "not take into account deficiencies in pace" because "[m]any employers require a certain output level from their employees over a given amount of time, and an individual with deficiencies in pace might be able to perform simple tasks, but not over an extended period of time." *Id.* On the record then before us, it seemed likely that, if the claimant often had "deficiencies in pace and this had been included in the hypothetical," the vocational expert would have "changed her answer as to whether there were jobs in the local or national economy that [the claimant] could perform[,]" given that "the vocational expert testified that each of the jobs suitable for [the claimant] … would have daily production quotas and that [the claimant] would have to maintain a certain degree of pace to maintain those jobs." *Id.* In light of all that, we concluded that "[t]his omission from the hypothetical runs afoul of our directive in [*Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987),] that a hypothetical question posed to a vocational expert must reflect *all* of a claimant's impairments," and conflicts with "our statement in [*Burns v. Barnhart*, 312 F.3d 113, 122 (3d Cir. 2002),] that 'great specificity' is required when an ALJ incorporates a claimant's mental or physical limitations into a hypothetical." *Id.* at 554-55 (citations omitted).

27

We immediately noted, however, that ALJs are not forbidden from using "simple tasks" limitations. An ALJ may frame a limitation in terms of "simple tasks" if – based on the facts of the case – the ALJ provides a "valid explanation" for doing so:

> Of course, [we said,] there may be a *valid explanation* for this omission from the ALJ's hypothetical. For example, the ALJ may have concluded that the deficiency in pace was so minimal or negligible that, even though [the claimant] "often" suffered from this deficiency, it would not limit her ability to perform simple tasks under a production quota.

*Id.* at 555 (emphasis added).

That we did not adopt a categorical rule regarding "simple tasks" limitations is confirmed by our discussion in *Ramirez* of case law from other circuits. Specifically, we examined four decisions, two of which held that an ALJ's limitation statement was adequate despite a finding that the claimant had deficiencies in "concentration, persistence, or pace," *id.* at 552-53 (citing *Howard v. Massanari*, 255 F.3d 577, 581-82 (8th Cir. 2001); *Smith v. Halter*, 307 F.3d 377, 378-79 (6th Cir. 2001)), and two of which held that the statement of limitation was insufficient in light of such a finding, *id.* at 553-54 (citing *Kasarsky v. Barnhart*, 335 F.3d 539, 544 (7th Cir. 2003); *Newton v. Chater*, 92 F.3d 688, 694-95 (8th Cir. 1996)). We emphasized that the outcome of each case turned on its particular facts. *Id.* at 552-54. That analysis animated our adoption of a fact-specific "valid explanation" approach.

In sum, *Ramirez* did not hold that there is any categorical prohibition against using a "simple tasks" limitation after an ALJ has found that a claimant "often" faces difficulties in "concentration, persistence, or pace." Rather, a "simple tasks" limitation is acceptable after such a finding, as long as the ALJ offers a valid explanation for it.

*Ramirez*'s "valid explanation" rule remains the law in our circuit.[13] That is true even though *Ramirez* dealt with a finding of difficulties in "concentration, persistence, or pace" that arose "often[,]" *id.* at 554-55, and here, due to a change in the regulatory rating scale, the ALJ expressed the limitation in different terms, saying that Hess had "moderate difficulties" in "concentration, persistence or pace,"[14] (App. at 32.)

---

[13] Our sister circuits have also adopted fact-specific approaches to whether an ALJ's chosen limitation is acceptable notwithstanding a finding of difficulties in "concentration, persistence, or pace." *E.g.*, *Scott v. Berryhill*, 855 F.3d 853, 855, 858 (8th Cir. 2017); *Vigil v. Colvin*, 805 F.3d 1199, 1203-04 (10th Cir. 2015); *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015); *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180-81 (11th Cir. 2011); *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-75 (9th Cir. 2008).

[14] The regulations previously assessed "concentration, persistence, or pace" on a scale of "never, seldom, often, frequent, and constant." *Ramirez*, 372 F.3d at 551. The regulations at issue here assess that functional area using a scale of "[n]one, mild, moderate, marked, and extreme." 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4).

29

Regardless of the rating scale, "simple tasks" limitations have a relationship to abilities in "concentration, persistence, or pace" that makes a valid explanation necessary after a finding in that functional area.

The relationship between "simple tasks" limitations and "concentration, persistence, or pace" is a close one. Indeed, such limitations directly encompass and anticipate a minimal level of ability in that functional area. Under the Social Security Administration's Program Operations Manual System ("POMS"),[15] "[u]nderstanding, carrying out, and remembering simple instructions" includes "[t]he ability to maintain concentration and attention for extended periods (the approximately 2-hour segments between arrival and first break, lunch, second break, and departure)[;] [t]he ability to perform activities within a schedule … [;] [t]he ability to sustain an ordinary routine without special supervision[;] … [and] [t]he ability to complete a normal

---

[15] We have characterized the POMS as "'the publicly available operating instructions for processing Social Security claims.' The Supreme Court has stated that '[w]hile these administrative interpretations are not products of formal rulemaking, they nevertheless warrant respect.'" *Kelley v. Comm'r of Soc. Sec.*, 566 F.3d 347, 350 n.7 (3d Cir. 2009) (alteration in original) (citations omitted). The POMS is especially entitled to respect in the present context, where the issue is whether the limitation chosen by the ALJ captured the claimant's capabilities and conveyed them to the vocational expert, given that the POMS establishes the generally understood meaning of terms within the social security regulatory framework.

workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." POMS DI 25020.010(B)(2)(a). In short, "concentration, persistence, or pace" is tightly linked to the capacity to complete "simple tasks."

Nevertheless, a "simple tasks" limitation alone does not account for the *extent* of a claimant's difficulties in "concentration, persistence, or pace." Without explanation, such a limitation does not warrant a conclusion about whether a claimant's difficulties in "concentration, persistence, or pace" are so serious that he cannot satisfy the functional requirements of "simple tasks." An explanation is thus important, regardless of the particular scale used for rating "concentration, persistence, or pace." It must be given whether difficulties in that area are said to arise "often" or are called "moderate" in severity.[16]

Based on their understanding of the import of *Ramirez*, the Magistrate Judge and the District Court concluded that the ALJ erred because she did not "explicitly include" her functional limitation finding as to "concentration, persistence or pace" in the RFC assessment or hypothetical questions, and that a "simple tasks" limitation was inadequate to address Hess's circumstances. (App. at 19.) In light of that conclusion, neither the R&R nor the District Court's opinion discussed the

---

[16] It is possible that the change in regulatory scale for measuring difficulties in "concentration, persistence, or pace" was more than a shift in the nomenclature. But we need not decide that issue today, given that our "valid explanation" holding applies in any event.

31

sufficiency of the analysis that led to the ALJ's "simple tasks" limitation. That is problematic, for, as we have noted here, it is essential to assess whether a valid explanation has been given for an ALJ's statement of a claimant's limitation to "simple tasks."

## C.       The ALJ Offered a "Valid Explanation"

The final question, then, is whether the ALJ in this case offered a valid explanation.[17] The government argues that the ALJ did so by analyzing Hess's difficulties in "concentration, persistence, or pace" and concluding that they were not so serious that Hess could not perform simple tasks. Hess's only response is that "the ALJ failed to set forth a supported rationale for [her] RFC findings." (Answering Br. at 5.) He does not assert that the ALJ mischaracterized the record, only that her analysis is flawed.

Having evaluated that analysis, we are persuaded that the ALJ did offer a valid explanation for her "simple tasks" limitation. As indicated by our detailed description of her

---

[17] As just stated, the District Court did not consider that issue. "[W]e ordinarily do not consider issues not addressed by the district court in the first instance." *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 253 n.6 (3d Cir. 2010). But, "[w]e may decide a question not addressed by the District Court when 'the record has been sufficiently developed for us to resolve [the] legal issue.'" *Chehazeh v. Att'y Gen.*, 666 F.3d 118, 140 (3d Cir. 2012) (second alteration in original) (citation omitted). Here, the record as to the adequacy of the ALJ's explanation has been sufficiently developed.

opinion, the ALJ explained at length and with sound reasoning why Hess's "moderate" difficulties in "concentration, persistence, or pace" were not so significant that Hess was incapable of performing "simple tasks." For example, coupled with her finding that Hess had "moderate difficulties" in "concentration, persistence or pace," the ALJ explained that Hess's "self-reported activities of daily living, such as doing laundry, taking care of his personal needs, shopping, working, and paying bills (when he has money), … are consistent with an individual who is able to perform simple, routine tasks." (App. at 32.) In the same discussion, the ALJ also observed that "progress notes from treating and examining sources generally indicate no serious problems in this area of functioning, reporting that [Hess] could perform simple calculations, was fully oriented, and had intact remote/recent memory." (App. at 32 (citations omitted).)

Likewise, in her meticulous analysis of the record at step four of the disability analysis, the ALJ highlighted, among other things, the following: mental status examinations and reports that revealed that Hess could function effectively; opinion evidence showing that Hess could do simple work; and Hess's activities of daily living, which demonstrated that he is capable of engaging in a diverse array of "simple tasks," such as "work[ing] three days a week for five to six hours as a dishwasher[.]" (App. at 37.) She additionally noted that there were no "reports of behavioral issues or problems completing tasks" during a significant period of close observation, and that the record "did not reveal frequent or regular serious symptoms." (App. at 37-38 (citations omitted).) The ALJ's review of the record, moreover, led her to give little weight to assertions that Hess had serious mental difficulties and to credit evidence that Hess could perform simple work. After all of

that, the ALJ explained that "appropriate limitations" were imposed to reflect Hess's mental impairments and that Hess's "impairments and the restrictions caused by them would not prevent him from performing sedentary, unskilled work as defined … in the [RFC]." (App. at 38-39.)

We think the ALJ's detailed explanation was sufficient.[18]   Indeed, the record evidence the ALJ cited in reasoning that a "simple tasks" limitation was appropriate is comparable to, or even stronger than, evidence that certain of our sister circuits have found to support similar limitations.[19]

---

[18] It gives us some pause that the ALJ did not address in her opinion her follow-up colloquy with the vocational expert, during which the ALJ posed questions that could bear on limitations in "concentration, persistence, or pace" and that the vocational expert admitted would prevent full-time competitive employment.  It would likely avoid unnecessary litigation if ALJs, under these circumstances, incorporated seemingly relevant responses from vocational experts such as those into their disability analyses.  But, the follow-up colloquy does not appear to have affected the ALJ's conclusions or decision.  (*See* App. at 40 ("Based on the testimony of the vocational expert, the undersigned concludes that, considering [Hess's] age, education, work experience, and [RFC], [Hess] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.").)  And, no one contends that the ALJ's opinion was deficient for not explicitly mentioning that colloquy.

[19] *See Scott*, 855 F.3d at 855, 858 (holding that a hypothetical question that "provided for medium, unskilled work involving 'personal contact that is incidental to the work

34

In sum, the ALJ's limitation "to jobs requiring understanding, remembering, and carrying out only simple instructions and making only simple work-related decisions[,]" (App. at 33-34,) was supported by a "valid explanation" and so

---

performed,' requiring 'little independent judgment … [and] simple, direct, and … very brief' supervision" was sufficient to account for a claimant's "moderate difficulties in concentration, persistence, or pace" where the ALJ acknowledged the claimant's "reading, writing, and math difficulties, … his history of special education and failure to finish high school[,]" his self-described "reduced attention span," and "that consultative examiners noted a slow pace[,]" but also explained that the claimant "'retains the focus necessary to watch three hours of television per day[,]' … does not require reminders[,]" and "demonstrated good concentration and persistence during consultative examinations" (first alteration in original)); *Vigil*, 805 F.3d at 1203-04 (holding that "the ALJ accounted for [a claimant's] moderate concentration, persistence, and pace problems in his RFC assessment by limiting him to unskilled work" because, despite finding "some evidence indicating that [the claimant] had some problems with concentration, persistence, and pace 'such that [he] could not be expected to perform complex tasks[,]'" the ALJ also "found that 'the findings of a normal ability to recall items on immediate recall, and an ability to spell words forward, as well as finding of normal thought processes, indicate[d] that [the claimant] retain[ed] enough memory and concentration to perform at least simple tasks'" (third, fifth, and seventh alterations in original) (citations omitted)).

was appropriate.  The administrative decision should therefore have been upheld.

## III.	CONCLUSION

For the foregoing reasons, we will vacate the judgment of the District Court and remand with instructions to enter judgment for the government.