**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1951
_____

RAFAEL MELENDEZ,
                                    Appellant

v.

COMMISSIONER OF SOCIAL SECURITY
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-20-cv-01887)
District Judge: Hon. John M. Vazquez
_____

Submitted Under Third Circuit L.A.R. 34.1(a):
May 3, 2022
_____

Before: GREENAWAY, JR., PORTER, and PHIPPS,
*Circuit Judges*.

(Filed: September 1, 2022)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

PORTER, *Circuit Judge.*

Rafael Melendez applied for disability insurance and supplemental security income under Titles II and XVI of the Social Security Act. 42 U.S.C. §§ 423(a) and 1382. The Social Security Administration denied his application. Melendez sued in District Court without success and now appeals. We will affirm the District Court.

I

Melendez applied for disability benefits in 2011, claiming that he had been unable to work since April 2009 because of his liver problems, arthritis, hepatitis C, high blood pressure, depression, and suicidal behavior. Melendez also has a history of heroin and alcohol abuse. He began treatment for his heroin abuse in 2009 and states that he stopped drinking in 2011.

In November 2011, Melendez visited Trinitas Regional Medical Center's Department of Behavioral Health and Psychiatry, complaining of worsening mood and suicidal thoughts. Melendez was discharged after hospital staff concluded that his overall suicide risk rating was "low." Three days later, Melendez returned to Trinitas, complaining that he was feeling depressed after his wife left him. He was admitted for inpatient treatment, placed in group therapy, and prescribed an antidepressant. He was discharged in December 2011. At that time a Trinitas psychiatrist examined Melendez and reported that his mood was "good." A.R. 395. After his discharge Melendez received outpatient treatment at Trinitas Substance Abuse Services. In January 2012, Substance Abuse Services observed that Melendez "presented with a neutral mood and affect," that his "thought process seemed within normal limits," that his "[l]ong and short-term

2

memory [was] good, and [that he was] oriented." A.R. 462. Melendez described himself as "a little" depressed. *Id*.

Further to his benefits application, the Social Security Administration referred Melendez to Dr. Ernesto Perdomo for psychiatric evaluation. Dr. Perdomo examined Melendez in March 2012. Melendez reported symptoms strikingly more severe than those observed at Trinitas. To Dr. Perdomo, Melendez reported that "he [was] very depressed," "confused," and so "disoriented" that "[h]e cannot go out alone [for] more than one block because he gets lost." A.R. 422. During the exam he was "able to repeat [only] 2 out of 5 words immediately after [they were] given to him." A.R. 423.

By contrast, two months later, Melendez described himself to Trinitas as "depressed but not more th[a]n usual," not suicidal, and comfortable waiting for a scheduled psychiatric appointment. AR. 472. Trinitas concluded that Melendez did "have depression-however appear[ed] stable" and noted that he was "comfortable following up outpatiently." A.R. 473.

Melendez's disability claim was initially evaluated by Dr. Robert Eckhardt. After considering Dr. Perdomo's report and Melendez's medical records, Dr. Eckhardt, who worked for the Social Security Administration, concluded that Melendez had not accurately reported his condition to Dr. Perdomo. Dr. Eckhardt concluded that Melendez was "not a credible informant" because he failed to disclose his "[history] of drug and alcohol abuse and current methadone therapy" at an earlier evaluation. The Social Security Administration denied his claim. Melendez requested reconsideration, and a second doctor reviewed Melendez's claim. That doctor agreed that Melendez was not

3

disabled, and the Social Security Administration denied Melendez's reconsideration request. Melendez then sought a hearing before an ALJ. Following a hearing, the ALJ concluded that Melendez was not disabled. The Appeals Council agreed, but the District Court remanded Melendez's case, directing the ALJ to make a severity finding as to Melendez's hepatitis C. The ALJ conducted a new hearing.

At that hearing the ALJ held that Melendez was not entitled to disability benefits because he was not disabled and could perform his prior work as a streetsweeper. The ALJ found that Melendez "ha[d] not engaged in substantial gainful activity since April 15, 2009" and that he suffered from three "severe impairments: affective disorder, substance abuse history, [and] Hepatitis C." App. 32. To be eligible for disability benefits, Melendez's impairments must either (1) render him disabled per se by "match[ing]" or "equal[ing]" an impairment on the Social Security Administration's "list of impairments presumed severe enough to preclude any gainful work," or (2) prevent Melendez from "do[ing] his own past work or any other work that exists in the national economy, in view of his age, education, and work experience." *Sullivan v. Zebley*, 493 U.S. 521, 525–26 (1990). The ALJ determined that Melendez satisfied neither requirement, and so, was not eligible for disability benefits.

Melendez "appealed to the Social Security Administration Appeals Council, which denied his request for review. Accordingly, the ALJ's decision became the final decision of the Commissioner of Social Security." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 207 (3d Cir. 2019); *Chandler v. Comm'r Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011).

4

Melendez sued in the United States District Court for the District of New Jersey, and the District Court affirmed the Commissioner's decision. This appeal followed.

II

The District Court had jurisdiction under 42 U.S.C. § 405(g). We have jurisdiction under 28 U.S.C. § 1291. On appeal from the District Court, "[w]e exercise plenary review over legal conclusions reached by the Commissioner." *Chandler v. Comm'r Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). And "[w]e review the Commissioner's factual findings for substantial evidence, which is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation marks and citations omitted).

III

On appeal, Melendez contests the ALJ's determination that Melendez was not per se disabled and the ALJ's determination that Melendez's disability did not prevent him from doing his past work. Melendez argues that the ALJ did not appropriately consider the medical evidence underlying each of her determinations. Melendez also challenges the ALJ's analytical approach, arguing that she failed to consider all the criteria for establishing a per se disability and that she did not sufficiently examine the effects of Melendez's substance abuse on his disability. None of Melendez's arguments prevail.

A

First, Melendez contends that the ALJ failed to adequately weigh the evidence of his impairment, by improperly discounting the findings of Dr. Perdomo in favor of Dr. Eckhardt's assessment and the Trinitas reports. But the ALJ did consider Melendez's

5

"psychiatric consultative examination in March 2012" with Dr. Perdomo. App. 33. The ALJ noted Dr. Perdomo's findings that Melendez "was not oriented to day, month, or year," that his "thought process appeared confused," that he "has psychomotor retardation," "[h]is mood was depressed," and his "cognition and memory were also reduced." App. 33–34. But the ALJ did not confine herself to Dr. Perdomo's report. She "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." App. 34. That evidence included the records of Melendez's treatment at Trinitas in December 2011, when "it was noted that his mental status was fairly intact," and January 2012, when his "mental status examination was noted to be within normal limits." App. 34. The ALJ was correct to consider "each source of relevant evidence" including "mental status examinations and reports, opinion evidence," and "mental health treatment history." *Hess*, 931 F.3d at 204. The evidence supports the ALJ's findings regarding Melendez's mental health.

B

Melendez also argues that the ALJ erred by failing to consider all four of the criteria for determining whether Melendez's impairments satisfied the requirements for a per se disability.

The Social Security Administration revised the four relevant criteria while Melendez's case was pending. *See* 81 Fed. Reg. 66138 (Sept. 26, 2016). The ALJ

6

considered the old, rather than revised, criteria. Although this was error, the error was harmless.[1]

The per se disability analysis "compar[es] the medical findings about [the claimant's] impairment(s) and the rating of the degree of functional limitation to the criteria of the appropriate listed mental disorder." *Hess*, 931 F.3d at 203 (citations and internal quotation marks omitted). The ALJ considered the extent to which Melendez's impairments impeded "activities of daily living," "social functioning," "concentration, persistence, or pace" and whether Melendez had experienced "repeated episodes of decompensation." App. 33. She found that Melendez suffered only mild difficulties as to the first three criteria and experienced no episodes of decompensation. *Id.* Under the revised criteria, the ALJ instead should have considered Melendez's ability to "[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage [him]self." 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). To support a finding of per se disability a "mental disorder must result in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning." *Id.* Pt. 404, Subpt. P, App. 1. But we do not reverse unless Melendez can

---

[1] The Social Security Administration revised the relevant criteria on January 17, 2017. 81 Fed. Reg. 66138. The revised rules apply. "If a court reverses [the Social Security Administration's] final decision and remands a case for further administrative proceedings after the effective date of [the revised] rules, [the Social Security Administration] will apply [the revised] rules to the entire period at issue in the decision [it] make[s] after the court's remand." *Id.* n.1. Although Melendez's case was remanded before the new rules came into effect, the administrative proceedings for which his case was remanded took place after the effective date, and "[w]hen the [revised] rules become effective, [the Social Security Administration] will apply them . . . to claims that are pending on or after the effective date." *Id.* at 66138.

"explain[] . . . how the . . . error to which he points could have made any difference." *Shinseki v. Sanders*, 556 U.S. 396, 413 (2009). Melendez cannot, because he cannot show how—even under the revised criteria—he could have established a per se disability.

The ALJ expressly held that Melendez experienced only moderate difficulty in social functioning and moderate difficulty with regard to concentration, persistence, or pace. App. 33–34. And the ALJ's factual findings that he could "perform[] his own personal care, hygiene, and grooming," go shopping, "handl[e] his finances," "attend[] church," and "us[e] public transportation" establish that Melendez did not have marked or extreme limitations in "adapt[ing] or manag[ing]" himself and that he can "[u]nderstand, remember, or apply information." App. 33; 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). As the ALJ found, "[i]n activities of daily living . . . [Melendez] has moderate restriction." App. 33. Far from being "a bare conclusion . . . beyond meaningful judicial review," the ALJ's factual findings and per se disability analysis make clear that Melendez is not per se disabled, even under the revised factors. *Burnett v. Comm'r Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000) (citation and quotation marks omitted) (holding that an ALJ's "bare conclusion" defied review). The ALJ's analytical error in the per se disability analysis was, therefore, harmless, and her determination that Melendez is not per se disabled is supported by substantial evidence.

C

Having determined that Melendez was not disabled per se, the ALJ analyzed whether Melendez could perform his prior work. To determine whether a claimant can perform his prior work, an ALJ determines the claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant's "residual functional capacity is the most [he] can still do despite [his] limitations." *Id.* §§ 404.1545(a)(1), 416.945(a)(1). If the claimant can perform his past relevant work despite his limitations, he is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Melendez first contends that the ALJ's residual functional capacity analysis was inadequate because it did not give sufficient weight to Dr. Perdomo's report. As discussed above, the ALJ properly weighed the evidence of Melendez's impairments. Nor does it matter that the ALJ's weighing of the relevant evidence, which appears throughout her opinion, was not exhaustively repeated in her residual functional capacity analysis. Although the per se disability analysis "differ[s] from [analyzing a claimant's ability to perform work], the functional limitation findings are plainly relevant to an ALJ's statement of the claimant's limitation at the later steps because they involve the claimant's actual impairments." *Hess*, 931 F.3d at 209. The ALJ's "findings need only be adequately conveyed in the ALJ's statement of the limitation, not recited verbatim. *Id.* at 210 (quotation marks omitted). Considering the ALJ's analysis as a whole, and her weighing of the range of evidence pertaining to Melendez's impairments, reasonable factual findings support her determination that he could perform his prior work, and so was not disabled.

Second, Melendez argues that the ALJ neglected to analyze whether his substance abuse materially contributed to his disability. But that analysis was not necessary in Melendez's case. "If [the Social Security Administration] find[s] that [a claimant is] disabled and ha[s] medical evidence of [his] drug addiction or alcoholism, [it] must determine whether [the claimant's] drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. §§ 404.1535(a), 416.935(a). But after considering all the relevant evidence, the ALJ found that although Melendez's "primary limitations arise from his polysubstance abuse; even taking that into account, he is not disabled." App. 36. The ALJ need not—and cannot—analyze whether substance abuse materially contributed to a disability that she determined Melendez did not have.

\* \* \*

The ALJ's determination that Melendez is not disabled per se and can do his prior work is supported by substantial evidence. We will affirm the District Court.

10